UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

KATHRYN B.,

             Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

———————————————————————

23-CV-00846-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 13)

Plaintiff Kathryn B.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 8) is denied, and defendant's motion (Dkt. No. 10) is granted.

———————————————

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

On November 11, 2019, Plaintiff applied for DIB, alleging disability beginning on November 21, 2013. (Administrative Transcript ["Tr."] 95-96, 269-73). Her application was denied initially on February 7, 2020, and on reconsideration on June 16, 2020. (Tr. 112-23; 125-36). Plaintiff subsequently requested a hearing which was ultimately held on November 2, 2021. (Tr. 31-70; 138-39).[3] On June 21, 2022, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's claim. (Tr. 13-30). On July 26, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review under 42 U.S.C. § 405(g). (Tr. 1-7). This action followed.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v.*

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

[3] Plaintiff's hearing initially commenced on July 28, 2021. (Tr. 71-93, 193-97). However, because of technical difficulties, the hearing was rescheduled. (Tr. 91-92).

*Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The

Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he

or she is not disabled regardless of any other factors or considerations.  *Id.*
§§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the
Commissioner asks two additional questions:  first, whether that severe impairment meets
the Act's duration requirement, and second, whether the severe impairment is either listed
in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in
Appendix 1.  *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements
of step three, the Commissioner will find that he or she is disabled without regard to his
or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

     If the claimant does not have the severe impairment required by step three, the
Commissioner's analysis proceeds to steps four and five.   Before doing so, the
Commissioner must "assess and make a finding about [the claimant's] residual functional
capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.*
§§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or
her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment
of the claimant's RFC is then applied at steps four and five.   At step four, the
Commissioner "compare[s] [the] residual functional capacity assessment . . . with the
physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f),
416.920(f).  If, based on that comparison, the claimant is able to perform his or her past
relevant work, the Commissioner will find that the claimant is not disabled within the
meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform
his or her past relevant work or does not have any past relevant work, then at the fifth
step the Commissioner considers whether, based on the claimant's RFC, age, education,
and work experience, the claimant "can make an adjustment to other work."  *Id.*

§§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is not disabled.  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

Preliminarily, the ALJ found that Plaintiff last met the insured status requirements of the Act through December 31, 2017. (Tr. 19). The ALJ next found at step one that Plaintiff had not engaged in substantial gainful activity from November 21, 2013, her alleged onset date, through December 31, 2017, her date last insured. *Id*. At step two, the ALJ found that while Plaintiff had the medically determinable impairments of multiple sclerosis and secondary progressive multiple sclerosis, these impairments were non-severe during the relevant period of her alleged onset date through her date last insured. (Tr. 19-22). Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. 23).

IV.    *Plaintiff's Challenge*

Plaintiff argues that the case must be remanded, because, at step two, the ALJ failed to evaluate properly medical opinion evidence.  The Court finds this argument without merit.

At step two of the sequential evaluation process, the ALJ considers whether a claimant has an impairment, or combination of impairments, that is severe. *See* 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities, including walking, standing, sitting, lifting, pushing, reaching, carrying, handling, seeing, hearing, or, speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1522; 404.1520(c). It is the claimant's burden to provide evidence that shows the severity of his or her impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5. (9187).  If it is determined that the claimant does not have an impairment or a combination of impairments that is severe, he or she is found not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c).

In this case, the ALJ found that from November 21, 2013, the alleged onset date, through December 31, 2017, the date last insured, Plaintiff's impairments were not severe. (Tr. 19-22). In arriving at this conclusion, the ALJ acknowledged that Plaintiff was diagnosed with multiple sclerosis in August 2019, (*see* Tr. 20; Tr. 716), but found that the record lacked objective medical evidence demonstrating her symptoms were disabling prior to her date last insured. (Tr. 22). Importantly, the relevant question for the ALJ to determine was not exactly when symptoms from multiple sclerosis first manifested, but when those symptoms became disabling. *See* 20 C.F.R. § 404.1529(a) ("There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other

symptoms alleged and that, when considered with all of the other evidence . . . would lead
to a conclusion that you are disabled.").

Specifically, the ALJ observed that while Plaintiff testified that she was unable to
work since November 21, 2013, because of various symptoms including blurred vision,
memory deficits, reduced stamina, difficulty balancing, numbness in her lower extremities,
and speech difficulties, there were minimal reports of these symptoms in the record during
the relevant period, and minimal objective evidence to corroborate such symptoms. (Tr.
20-22; 46-47). For instance, as the ALJ observed, while Plaintiff treated with an
ophthalmologist for blurry vision during the relevant period, she also generally reported
satisfaction with her corrected vision during the relevant period. (Tr. 20-21; 531; 781).
Additionally, the ALJ observed that in a routine follow-up with her gynecologist in February
2016, Plaintiff denied extreme fatigue as well as neurological and psychiatric symptoms.
(Tr. 21; 547). Moreover, Plaintiff's examination findings during this visit showed no
abnormalities affecting her back or extremities. *Id.* Similarly, the ALJ also observed that
although Plaintiff sporadically treated with a chiropractor in 2013, 2015, and 2017, the
chiropractic records did not reflect any reports of numbness in her extremities or difficulty
balancing. (Tr. 21; 549-71; 860-61; 863; 866-69). Furthermore, the ALJ also noted that
while chiropractic examination findings showed tenderness and decreased range of
motion in September 2015 and January 2017, they did not indicate any gait abnormalities
or loss of strength or sensation. (Tr. 21; 552-53).

As the ALJ noted, Plaintiff herself acknowledged that the administrative record
lacked objective medical evidence during the relevant period. (Tr. 21; 416; 844). Plaintiff's
representative at the administrative proceedings attempted to justify this lack of medical

evidence by initially arguing that obtaining records from 2013 to 2015 was not possible because the records were destroyed following the retirement of Plaintiff's primary care physician, Dr. Jordan, in 2015. (Tr. 21; 416-18; 836). However, Dr. Jordan notified his patients of his upcoming retirement in 2015 and advised them that they could sign an authorization for the release of their medical records, which Plaintiff admitted she did not do. (Tr. 58-59; 836). Plaintiff's representative also subsequently cited a 2019 cyber-attack on Olean Medical Group as an additional reason why evidence was unobtainable, without specifying what evidence was allegedly destroyed. (Tr. 21; 352; 424).

Moreover, putting aside the reasons that Plaintiff could not obtain records from Dr. Jordan, the ALJ also noted that Plaintiff did not seek any consistent medical treatment from a primary care physician or specialist until 2019, belying her claims of debilitating symptoms during the relevant period. (Tr. 21-22; 424). While Plaintiff alleged that there is a dearth of available physicians in the rural area where she lives, it was nonetheless reasonable to expect a greater pursuit of treatment during an approximately four-year period, given her claims of debilitating symptoms. (Tr. 22; 482-97). *See Ball v. Berryhill*, 17-cv-06312, 2018 WL 2041596, at *7 (W.D.N.Y. May 2, 2018) (acknowledging that the nature and type of treatment a claimant receives is a proper consideration under the regulations and finding no error in the ALJ's conclusion that the claimant "ha[d] not engaged in the type of treatment one would expect for a totally disabled individual"). As such, Plaintiff did not meet her burden of showing that her impairments were severe prior to her date last insured.

In support of the conclusion that Plaintiff lacked a severe impairment during the relevant period, the ALJ also considered the prior administrative medical findings of state

agency medical consultant, Dr. Saeed, who reviewed the record in June 2020 and found that the evidence was insufficient to support a finding of disability prior to the date last insured. (Tr. 22; 107).[4] The ALJ found this assessment persuasive on the basis that it was consistent with the general lack of supporting objective evidence in the record. (Tr. 22); 20 C.F.R. § 404.1520c(c)(1). The ALJ also considered letters submitted in 2020 and 2021 from Plaintiff's treating providers, Lee Gerwitz, M.D, and Ryan Canissario, M.D., stating that Plaintiff's symptoms had been present for many years prior to her diagnosis. (Tr. 22; 716; 834-35). However, the ALJ found that these assessments were not supported by objective evidence during the relevant time period and that these providers did not begin treating Plaintiff until well after the relevant period. (Tr. 21-22). *See Patterson v. Comm'r Soc. Sec.*, 18-cv-0556, 2019 WL 4573752, at *5 (W.D.N.Y. Sept. 20, 2019) (collecting cases noting that "[a] medical opinion rendered well after a plaintiff's date last insured may be of little, or no, probative value regarding plaintiff's condition during the relevant time period."). To be clear, the record does not show treatment with Dr. Gerwitz until August 2019 (Tr. 625-32) and does not show any visit notes with Dr. Canissario.

Plaintiff hones in on Dr. Canissario's assertion that his conclusions were based on his "review of outside records, prior neurology notes and personal conversations with [Plaintiff]." (Tr. 834). However, Dr. Canissario did not provide any specifics as to exactly what "outside records" and "prior neurology notes" had formed the basis of his conclusion, and his assertions were unsupported by the evidence in the record, as the ALJ found. (Tr.

---

[4] State agency consultant R. Uppal, D.O., reviewed the record in January 2020 and affirmed Dr. Saeed's finding. (Tr. 98).

22). In fact, the ALJ explicitly raised this point to Plaintiff's counsel at the hearing and allowed her extra time to follow up with Dr. Canissario to ascertain the "outside records that he was looking at." (Tr. 69). Thereafter, Plaintiff's counsel reported that no additional records were available. (Tr. 424). As such, Dr. Canissario's conclusions were unsupported, as the ALJ found. (Tr. 21-22).

In addition, the ALJ observed that neither Dr. Gerwitz nor Dr. Canissario provided a function-by-function assessment of Plaintiff's abilities and limitations. (Tr. 22). As such, their assessments were arguably neither valuable nor persuasive under the regulations. *See* 20 C.F.R. § 404.1520b(c)(3)(i)-(iii) (statements on issues reserved to the Commissioner, including blanket statements that a person is or is not able to work, statements about whether or not an impairment is severe, and statements about whether or not an impairment meets the duration requirement, are neither inherently valuable nor persuasive).

The ALJ found that Dr. Gerwitz's conclusion that Plaintiff's multiple sclerosis was present for many years was unsupported, pointing out that Dr. Gerwitz did not cite any specific evidence to support this conclusion. (Tr. 22); s*ee* 20 C.F.R. § 404.1520c(c)(1). Likewise, the ALJ found that Dr. Canissario's assessment that Plaintiff's symptoms had caused "significant disability in the preceding years" was unsupported by the record and inconsistent with the examination findings during the relevant time period. (Tr. 22; 834)*; see also* 20 C.F.R. § 404.1520c(c)(1)-(2). Specifically, the ALJ pointed out that the records prior to the date last insured showed no lower extremity numbness or speech disturbance, contrary to Dr. Canissario's assumptions regarding Plaintiff's symptoms and functioning during the years prior to the date last insured. *Id.*

Plaintiff argues that the ALJ's reliance on Dr. Saeed's assessment of insufficient evidence to support a finding of disability was improper because Dr. Saeed did not treat her and is not a specialist in neurology. Specifically, relying on *Greif v. Kijakazi*, 2022 WL 280605, at *8 (E.D.N.Y. Jan 31, 2022), Plaintiff argues that Drs. Gerwitz's and Canissario's assessments should have been found more persuasive due to their status as treating physicians. However, *Greif* interpreted the prior regulations for the evaluation of opinion evidence applicable to claims filed on or before March 27, 2017, which were more deferential to opinion evidence from treating sources. *Compare* 20 C.F.R. § 404.1527(b), (d)(2) *with* 20 C.F.R. 404.1520c(a). The Commissioner's revised regulations for evaluating medical opinions clearly state that the ALJ need not "defer" to any opinion in the record. 20 C.F.R. § 404.1520c(a) (in evaluating claims filed March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources.").

The revised regulations for evaluating medical opinions also clearly state that, while the ALJ will explain how the factors of supportability and consistency were considered in evaluating medical opinions and prior administrative medical findings, the ALJ "may but [is] not required to explain" how other factors, including treatment relationship and specialization, were considered. *Id.* at § 404.1520c(b)(2). Accordingly, the ALJ's failure to address the issue of specialization in her decision was not error. *Angela B. v. Comm'r Soc. Sec*, 21-CV-581-FPG, 2022 WL 17247244, at *3 (W.D.N.Y. Nov. 28, 2022) (affirming, and finding that "there is no error per se based upon the ALJ finding the consultative medical opinions more persuasive than the opinions of the

treating physicians"), *Karen S. v. Comm'r Soc. Sec*, 21-CV-6232S, 2023 WL 4782259, at *3 (W.D.N.Y. July 27, 2023) (rejecting argument that ALJ's determination was not supported by substantial evidence because he found a treating source's opinion less persuasive than the opinions of the consultative examiner and state agency consultant).

Plaintiff also urges the Court to consider that Dr. Gerwitz and Dr. Canissario were both well acquainted with multiple sclerosis and how it progresses over time. However, the ALJ was not tasked with considering the general presentation of multiple sclerosis, but rather the specific symptoms and limitations that were shown in the administrative record. *See* 20 C.F.R. § 404.1529(a) (a finding of disability cannot be made based upon symptoms alone and must be corroborated by objective evidence). As discussed above, the record showed no significant complaints corroborating the symptoms now alleged and showed predominantly routine visits for unrelated complaints. (Tr. 482-97 (print out from Plaintiff's insurance company, showing approximately 13 doctors' visits for urinary tract infections, joint sprains, routine gynecological visits, and sinusitis, during the period from 2015 through 2018)). Simply put, Plaintiff was not entitled to a presumption of disability due to the nature of multiple sclerosis.

Additionally, Plaintiff argues that Dr. Saeed's assessment is not substantial evidence because he did not review the complete record. Specifically, Plaintiff argues that Dr. Saeed missed Dr. Gerwitz's letter, pointing out that Dr. Saeed noted that there were no medical opinions from any source, and Dr. Gerwitz had submitted his letter three months prior. (Tr. 108; 716). Relatedly, Plaintiff points out that Dr. Saeed did not review the opinion of Dr. Canissario, which was dated approximately nine months after Dr. Saeed issued his assessment. (Tr. 834-35). However, as stated previously, the letters submitted

by Dr. Gerwitz and Dr. Canissario were neither inherently valuable nor persuasive under the regulations, and as such Dr. Saeed reasonably declined to address Dr. Gerwitz's letter. *See* 20 C.F.R. § 404.1520b(c)(3)(i)-(iii).

Moreover, Dr. Saeed's opinion was not stale. *Id*. Reviewing courts have recognized that an opinion is not automatically rendered stale by the submission of evidence dated after the opinion. *See Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (finding that a state agency consultant's assessment was not automatically stale simply because the consultant did not review subsequent treatment records and opinion evidence, where the later-submitted evidence was not materially different from earlier records); *see also Melinda J.C. v. Comm'r of Soc. Sec.*, No. 1:19-cv-01618-JGW, 2021 WL 766860, at *4 (W.D.N.Y. Feb. 26, 2021) (affirming ALJ's reliance on state agency assessment and finding "although issued prior to the alleged onset date, the opinion was well-supported and consistent with later evidence."). The relevant question is whether Dr. Canissario's opinion undermined Dr. Saeed's conclusions, and Plaintiff has not shown that it did. As previously discussed, the ALJ found that Dr. Saeed's assessment was consistent with and supported by the record, which lacked evidence demonstrating that Plaintiff had a severe impairment during the relevant period. (Tr. 22).

In sum, the ALJ's step two finding was supported by substantial evidence and must be affirmed.

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is denied and defendant's motion for judgment on the pleadings (Dkt. No.10) is granted. The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:    March _3_, 2026
          Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge

- 15 -